**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| AMY NADIM<br>13 Northridge Way<br>Warren, NJ 07059 | :<br>:<br>: | |
| | : | CIVIL ACTION |
| Plaintiff, | :<br>: | CASE NO.: |
| v. | :<br>: | |
| GLAS AMERICAS, LLC<br>3 Second St.<br>Jersey City, NJ 07302 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>:<br>: | |

**CIVIL ACTION COMPLAINT**

Amy Nadim (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Plaintiff against GLAS Americas, LLC (hereinafter referred to as "Defendant") for violations of the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*), 42 U.S.C Section 1981 ("Section 1981"), and the New Jersey Law Against Discrimination ("NJ LAD" –N.J.S.A. §§ 10:5-1 *et. seq.*).[1] Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff also filed claims of racial discrimination with the EEOC under Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e, *et. seq.*). These claims are still pending in the EEOC; however, Plaintiff intends to amend the instant Civil Action Complaint once such claims have been fully exhausted with the EEOC and the EEOC issues a right to sue letter. Plaintiff's Title VII claims will identically mirror her Section 1981 claims asserted herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADEA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings related to her ADEA claims before initiating this action by timely filing her Charge with the EEOC and waiting sixty (60) days before filing the instant lawsuit.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant operates as a provider of finance administration services in the United States.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 62-year-old female.

12. Plaintiff identifies as Caucasian.

13. Plaintiff was hired by Defendant in or about January of 2022 as a consultant.

14. At the time of her hire, Plaintiff was informed that if Defendant's management was happy with her performance, she would be hired as a permanent employee.

15. After working for Defendant as a consultant for two months, Plaintiff was hired as a permanent employee on or about March 7, 2022.

16. While Plaintiff was supposed to be a consultant for three months in total, she was hired as a permanent employee by Defendant within two months because of her stellar work ethic and performance.

17. From the time of her hire (as a consultant) until in or about June of 2022, Plaintiff was supervised by the Vice President of the Transaction Management Group, Yana Kislenko (40s – Caucasian, hereinafter "Kislenko").

18. Plaintiff's title as a permanent employee was Assistant Vice President ("AVP") of the Transaction Support Group and in this role, she was tasked with supporting the Transaction Management Group.

19. Before July of 2022, Plaintiff received no concerns about her employment/performance and was doing very well.

20. Defendant is a privately owned company and during Plaintiff's employment, there were consistent discussions about growing and expanding the company.

21. In fact, when Plaintiff was first hired (as a consultant and the later a permanent employee), it was only her and another employee, Tamika McCaskill (30s, African American – hereinafter "McCaskill") who were employed in Defendant's Transaction Support Group, and together they supported Defendant's Transaction Management Group, which also had two employees at that time.

22. In or about July of 2022, Defendant brought in new graduates to work for the company, who were all significantly younger than Plaintiff, and Plaintiff was involved in training them.

23. Upon information and belief, Defendant brought in these younger individuals with the intent to keep them on a permanent basis if they performed well.

24. In or about July of 2021, once Defendant began to expand Plaintiff's department, McCaskill was promoted to Vice President of the Transaction Support Group.

25. As a result, from in or about July of 2022 until Plaintiff's ultimate termination on October 28, 2022 (discussed further *supra*), Plaintiff was directly supervised by McCaskill (instead of Kislenko).

26. In or about September of 2022, it was announced that two out of the six young graduates who Plaintiff helped trained were being hired permanently as analysts for Defendant.

27. The two individuals that were hired in or about September of 2022 are both African American.

28. Shortly after it was announced that these aforesaid young African American graduates were hired to work in Plaintiff's group, Plaintiff was terminated from her employment with Defendant on October 28, 2022.

29. In close proximity to her termination, Plaintiff also saw an email that was sent out to Defendant's employees, which indicated that the Transaction Support Group had hired another analyst, who upon information and belief is also younger than Plaintiff and African American.

30. Plaintiff believes and avers that she was terminated from her employment because of her advanced age and/or race because *inter alia*:

    (a) Plaintiff was treated in a rude and demeaning manner unlike her younger, African-American co-workers.

    (b) Defendant's management, prior to McCaskill, never had any complaints about Plaintiff's performance as a consultant or even during the first three months after she was hired by Defendant as a permanent employee.

    (c) It was not until in or about August of 2022, after McCaskill became Plaintiff's manager and right around the time that Defendant brought in younger graduates (that Plaintiff helped train), that Defendant's management (specifically McCaskill) began nit-picking Plaintiff's performance, sending her harassing and intimidating emails and subjecting her to pretexual verbal admonishment regarding her performance.

    (d)    After the aforesaid young graduates were brought in (around July of 2022), McCaskill also began to make discriminatory comments based on Plaintiff's age, such as stating to Plaintiff that the younger graduates were quick, and she was slow.

    (e)    The alleged performance issues that McCaskill was reprimanding Plaintiff for between August of 2022 and her termination in October of 2022 were related to things that she had done her entire employment with Defendant (even as a consultant), but no one addressed these things as "issues" previously.

    (f)    McCaskill did not even bring the aforesaid alleged performance issues to Plaintiff's attention when she was training Plaintiff as an equal (before her promotion) and in fact, McCaskill told Plaintiff how happy she was with her performance and bragged about how well she had trained Plaintiff.

    (g)    It was clear to Plaintiff that McCaskill was simply creating "issues" with her performance as a means to create a paper trail in order to try to expedite her termination, so she could build her team with younger, African American employees.

    (h)    Plaintiff was also told that her health insurance was costing the company more money because her and her husband were both 62 or older.

31.    In or about August of 2022, McCaskill and Plaintiff both met with Defendant's HR personnel because of concerns Plaintiff had with the harassment and bullying that McCaskill was subjecting her to.

32. Plaintiff informed HR at this time (in August of 2022) that she was concerned she was being targeted because of her age.

33. Rather than properly investigate Plaintiff's concerns of age discrimination, McCaskill and Plaintiff were simply told that they had to work together and suggested that they get together for coffee to figure things out.

34. On or about September 6, 2022, Plaintiff had a meeting with McCaskill and Latonya Butler (Human Resources Generalist) wherein Plaintiff was informed that Respondent was extending her six-month probation (as a permanent employee) another 90 days because McCaskill did not find her performance to be satisfactory.

35. In or about the same time that Plaintiff was informed her six-month probation was being extended, it was announced that Defendant had hired two of the aforesaid six graduates into the Transaction Support Group (both in their 20s and African American – discussed *supra*).

36. While Defendant's 90-day extension of Plaintiff's probationary period should have given Plaintiff until about December 6, 2022 to improve her alleged performance issues, Defendant's management terminated her employment abruptly on October 28, 2022.

37. When Plaintiff was terminated from the company, the employee demographic of her department consisted of employees primarily in their 20s and 30s who were all African American.

38. It was clear that Defendant wanted to establish a younger workforce, and Plaintiff did not fit into that plan.

39. Plaintiff believes and therefore avers that she was terminated in violation of the ADEA, Section 1981, and the NJ LAD.

## COUNT I
### Violations of the Age Discrimination in Employment Act ("ADEA")
(Age Discrimination & Retaliation)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was subjected to a hostile work environment through disparate treatment, pretextual admonishment, discriminatory comments and/or demeaning treatment during her employment with Defendant because of her advanced age.

42. Plaintiff expressed concerns regarding the aforesaid discriminatory treatment to Respondent's HR department in advance of her termination; however, her concerns were never properly investigated or resolved.

43. Instead of properly investigating or resolving her concerns of age discrimination, Plaintiff's probation was extended and then she was ultimately terminated.

44. Plaintiff believes and avers that her probation was extended, and she was ultimately terminated from Defendant because of her advanced age and/or in retaliation for engaging in protected activity under the ADEA.

45. These actions as aforesaid constitute unlawful retaliation under the ADEA.

## COUNT II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
(Age Discrimination & Retaliation)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT I of the instant Civil Action Complaint, as such actions constitute identical violations of the NJ LAD.

## COUNT III
## Violations of 42 U.S.C. § 1981
### (Race Discrimination)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. In or about September of 2022, Defendant hired two African American employees (who Plaintiff helped train) into Plaintiff's department.

50. Shortly before her termination, Plaintiff also saw an email which indicated that her department had hired another employee, who upon information and belief was also African-American.

51. At the time of her termination from Defendant, Plaintiff was the only individual who was not African-America/black.

52. Plaintiff was subjected to a hostile work environment through disparate and/or discriminatory treatment and pretextual admonishment during her employment with Defendant because of her race (unlike her African-American counterparts).

53. Plaintiff believes and therefore avers that her race was a motivating or determinative factor in Defendant's decision to extend her probation and then ultimately terminate her employment.

54. These actions as aforesaid constitute unlawful discrimination under Section 1981.

## COUNT IV
## Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Race Discrimination)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT III of the instant Civil Action Complaint, as such actions constitute identical violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.	Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.	Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

By:	Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Building 2, Ste. 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 2, 2023